May it please the court. My name is Greg Wallace and I represent Kyle Bryant in this appeal on behalf of his deceased father Donald Bryant. Now Mr. Bryant, the father who was the claimant in this case, died eight months after the ALJ's decision in October 2010. Mr. Bryant had a number of... I'm curious what's the range or what benefits are awarded to the heirs if you prevail? The heirs would get back pay. They would not get any sort of continuing monthly kind of payment but they would get back pay which I think would help them defray some of the medical expenses and things like this for for Mr. Bryant's care because he did not have insurance. Now he suffered from a number of medical conditions, congestive heart failure, coronary artery disease, malignant hypertension, hypertensive cardiomyopathy, chronic problems with his kidneys, with his colon, with his liver, COPD, extreme obesity. His body mass index was 46 and as I said he died from a according to the autopsy report from a hypertensive heart disease and this coronary artery disease. He did testify at the hearing that that these conditions made him short of breath. He had difficulty raising his arms over his head. He had fatigue. He had swelling in his lower extremities. The pain that was associated with various conditions affected his concentration, his memory, and his attention. He could not sit long periods because of rectal pain. He had problems with his colon. Now the ALJ found that Mr. Bryant could perform sedentary, unskilled sedentary work essentially with some environmental limitations and this is about credibility here and our contention is that the record does not support the ALJ's discrediting of Mr. Bryant's here. It's a Pulaski case exactly your honor and for the reasons that the ALJ offered here, first the ALJ said that he's discrediting Mr. Bryant because he had no frequent treatment or extensive pain medications. Now the Commissioner has translated that in her brief to she describes it as conservative non-surgical treatment but I think both of those descriptions mischaracterize the record as several hundreds of pages of medical evidence indicates Mr. Bryant went to multiple doctors. He had CT scans, MRIs, echocardiograms, EKGs, Dopplers, abdominal series. He was prescribed pain medications, Norco, Hydrocodone, Lorset Plus, Vicodin, Tramadol and even Vicodin extra strength and he did undergo numerous surgical procedures. He had a colostomy back in 1993, he had a bladder biopsy, a cystoscopy, a uteropilogram and he even had on two in the in the year prior to the ALJ's decision he was hospitalized three times and then he was hospitalized one more time that year after the ALJ's decision and in March of 2010 he went in for chest pain and shortness of breath. He was diagnosed with severe global hypokinesis which is hypokinesis is decreased bodily movement due to an injection fraction of 25 to 30 percent in September of 2010. He had experienced severe rectal pain and bleeding and shortness of breath. He was diagnosed there with hydronephrosis which is a obstructed kidney. The term literally means water on the kidney but it was includes other obstructions as well as and congestive heart failure at that and had a cystoscopy and a pyrography which was in which a stent was inserted and then a month after the ALJ's decision he was re-hospitalized for a fourth time with dizziness and he had fallen, he had increased fatigue. At that time the doctors noted his uncontrolled hypertension and his hypertensive cardiomyopathy which is a weakening of the heart and sure enough eight months later he was was dead of a heart attack. So I don't think the ALJ's characterization or the Commissioner's characterization as conservative non-surgical treatment here is something that is accurate from the record. The ALJ also held it against Mr. Bryant that no treating doctor had had given him any work restrictions and we cited three cases, Pate versus Fires, Hutzel, Pate, Fires, Hutzel and Lauer in which this court is held that that's not a significant issue if these if there's no indication that the doctors were ever asked for an opinion and in this driving his mother to the doctor and shopping are not the kinds of activities and we cited numerous cases in our brief there these are not the kind of activities that demonstrate that a person is capable of performing you know full-time work on a five day, eight hour a day basis in that regard. The ALJ faulted him for some non-compliance and there are a couple of instances in the case where he was not taking his medications of course he didn't have any health insurance and there were times that he had his he didn't have the seems to me it's it's a big it's a big hurdle for us to to step in when there's a non-compliance of this duration and completeness. Well he did try to he did reduce his smoking and and and the the applicable regulation here is is that for multiple packs a day to one pack a day I would would think that I'm not sure heavy but but moderate at least moderate smoking yes at least moderate in that in that regard. But there's also evidence in the record that his attorney tried to get him to apply for some of the programs that drug manufacturers offer to alleviate the cost of the medications and he didn't even bother to fill out the forms. Yeah there was one there was one reference to that but but at the same time you have to compare that to all the treatment that he did receive here including medications and and that and when you when you compare the these isolated incidences now the smoking is a separate issue obviously but I'm amazed that he was able to receive as much treatment as he did given the fact that he didn't have have health insurance and the financial resources here but the against the claimant if if stopping smoking would restore that person's ability to work and there's no evidence in the record that that stopping smoking I obviously common sense would tell you it would have helped but there's no evidence in the record that his stopping smoking would restore his ability to work here and because his you know his see given the fact that he was afflicted with so many different types of conditions here certainly it would not have affected his his colon and rectal issues which go to his ability to sit you know for for six hours six to eight hours in a workday so given that I think yes yes yes it is your honor I I would agree but again the question would be whether that would restore the damage that's already been done you know in his particular case there's no evidence in the record that that that that is true in that regard so we ask for for a remand for proper consideration of his of the the credibility of his testimony thank you your honor may it please the court my name is Quentin Sanders I'm counsel for the substantial evidence supports the LJ's credibility findings and its ultimate finding that plaintiff was not disabled during the relevant period of May 2008 through October 13th 2010 first I'd like to talk about the factors that the LJ considered to find plaintiff not credible these were affirmative findings that clearly show that plaintiff was not disabled yes that is is there any is there any case law about whether that's ever happened and if so what are the issues and how is the remand done well to my in this case it would reward claim it's for dying after the LJ's decision no if we remand for new assessment of credibility and it can't be reassessed can we get there from here yeah I mean the old then either the old you know then you go up or down on the old so I why why isn't remand a non-option well I would argue because the evidence before I know you you don't think it's needed obviously but but I've tried what would we do what are we going to ask them to do will you basically affirm that he wasn't disabled during that relevant time period as judge Loken pointed out this person was smoking was obese and he testified that he should he didn't follow doctor's orders to stop smoking and a plaintiff counsel didn't answer this directly but a pack of cigarettes equates to 20 at one point he was smoking one pack and a half which is 30 cigarettes a month and I also want to address this argument about about no physician opining any work restrictions that is a credibility factor that the LJ can rely on as this court held in Pelkey and Eichelberg so despite all of the elements that complain of claimant had no doctor of the record opined any work restrictions and that is consistent with plaintiff actually collecting unemployment benefits another point that plaintiff's counsel didn't mention as this court is held many times in Johnson Trader and Jernigan collecting employment unemployment benefits bolsters the LJ credibility determination that person is actually holding themselves out as willing able and ready to work which is consistent with no doctor in the record opining any work restrictions in addition the LJ considered medication non-compliance as plaintiff's counsel just spoke about in Judge Loken again he didn't stop smoking doctors told him to he didn't he smoked anywhere between 20 to 30 cigarettes a day he was obese he also testified that he was told to exercise and diet to lose weight he didn't do that so in terms of not being able to and as I cited in the brief he hasn't shown any evidence that he was denied any low-cost health care assistance or medication assistance and as Judge Simple pointed out this was in December 2010 after the LJ's decision he didn't even enroll in the medication assistance program this is a person with cardiac disorders and not taking his medications and not doing anything to seek smoking that smoke and not exercise and plaintiff's counsel also talks about conservative non-surgical treatment the LJ mentioned conservative treatment in the aspect of he was only taking prescription medications for pain and had no surgery related to any cardiac issues now that was the only factor he considered in isolation plaintiff's argument would be stronger but that was one of many factors that the LJ considered to find plaintiff not credible me being medication non-compliance a lack of work restrictions by any physician collecting unemployment benefits which shows he was willing and able to work and also daily activities of housekeeping which included sweeping, mopping, doing laundry, making his bed he actually testified that he cared for his disabled mother by driving her to doctor's appointments and taking her shopping. Nonetheless the LJ did take into account plaintiff's limitations and limiting him to less than sedentary work with environmental restrictions in fact if you look at the DDS reviewing physician he found that plaintiff could do light work so the LJ went even further in restricting plaintiff and that brings me to the next point I want to make using that less than sedentary RFC he posed a hypothetical question to the vocational expert the vocational expert said there was other work that plaintiff could perform at step five and I want to address plaintiff's conclusory argument that in light of being limited to sedentary work he reaches a meets a borderline age category being that he was 10 months away from being 50 years old which would have rendered him disabled that's not applicable because if this court ruled in buys eight months is not considered a borderline situation so 10 months also is too distant and lastly I want to address and I think I've already done that the context of how plaintiff died eight months after the LJ's decision it was in the context of continuing to smoke at that point he was smoking 20 cigarettes a day that's essentially 400 cigarettes 600 cigarettes a month his last treatment or seeking treatment was December 2010 he didn't seek any treatment after that didn't sign up for the medication assistance program and six months later after that he died from sudden cardiac arrest so that was a foreseen death not not following doctor's orders and not smoking and not to make light of his not to make light of him every day and die from cardiac arrest and here we have a plaintiff who was collecting unemployment benefits had daily activities that were housekeeping and caring for his disabled mother no physician opined any work restrictions he wasn't compliant with his medication and when he was taking medication it was RFC limitations didn't seem to take the colon situation that what's referred to as can't sit into account right and that is a technically plaintiff waves that issue of being able to sleep and having to sleep in a recliner and having limitations in sitting he only brings that up at the appellate level he didn't bring that up at the district court level but the record as a whole if he's trying to collect well not trying if he's collecting unemployment benefits he's saying he is willing ready and able to work he actually testified that for 12 months to up to 12 months to 18 months of the relevant year he was collecting unemployment benefits and his daily activities as I mentioned negate any limitations he claims to have and to not be able to perform sedentary work so in closing I asked this court to affirm the district courts decision thank you thank you counsel it's no time your honor why we would like a remand is is in these in these credibility issues in these determinations the medical evidence plays a huge part in that's not the only part as Pulaski requires but it's a huge part and when you have an ALJ that starts out with the standpoint of he hasn't received much treatment and taken no serious pain meds which is so contradicted by the record then what we would like to do is to have this remanded so that another ALJ who will give proper weight to the medical evidence then can can review again his testimony so thank you